```
IAN WALLACH (SBN 237849)
THE LAW OFFICES OF IAN WALLACH, P.C.
5777 West Century Boulevard, Suite 750
Los Angeles, CA 90045
E-mail: iwallach@wallachlegal.com
Tel.:  (213) 375-0000
Fax.:  (213) 402-5516
```

*Attorney for Defendant*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            Plaintiff,<br><br>v.<br><br>GOMEZ,<br><br>            Defendants. | Case No: 2:17-cr-00064-3-CAS<br><br>SUPPLEMENTAL MOTION TO DISMISS<br><br>Hearing Date:  November 24, 2026<br>Hearing Time: 12:00 p.m.<br>Courtroom:     8D<br><br>*Before Honorable Christina A. Snyder* |

MEMORANDUM

I.   STATEMENT OF RELEVANT FACTS

Defendant was indicted on February 3, 2017. [ECF 1] and first appeared on December 8, 2020. [ECF 67]. He entered a plea of guilty within a year, on December 8. 2021. [ECF 99].

1  While awaiting sentencing, he received grueling intimidating threats to disavow
2  any involvement – including a photograph sent to his cell phone of a dismembered child
3  accompanied by a list of the names of his immediate family members (AUSU Julie
4  Shemitz responded by immediately having a federal agent contact Mr. Hernandez and
5  offer to provide any safety measures requested and to monitor the matter).
6  Subsequently, on or about February 17, 2025, after five years of perfect
7  performance while on pre-trial supervision, Defendant was detained by ICE. Defendant
8  was kept in General Population for 5 weeks, at great risk to his personal safety
9  considering the threats he received. During this time, defense counsel had multiple
10 phone calls and sent multiple emails to AUSA LeCedre seeking assistance for
11 Defendant. The Government took no action regarding Defendant -- failing to even once
12 speak to any official of ICE about the matter, even though the defense had connected
13 AUSA LeCedre via email to the ICE officer responsible for Defendant's ICE case. On
14 March 24, 2025, Defendant was deported to Mexico.
15 Prior to and during his deportation the Government did not request any future
16 contact information from Defendant or provide any means for Defendant to contact the
17 Government regarding his criminal matter after his deportation. In short, the
18 Government was done with him.
19 Later, however, the Government determined that they wanted Defendant's
20 assistance with various proceedings after all. However, while the Government could
21 arrange for parole that would allow for his re-entry (or stayed his deportation
22 altogether), the Government (a) refused to make any safety assurances regarding
23 Defendant's return (despite multiple requests from defense counsel and inquiries from
24 the Court); and (b) lacked means to contact Defendant aside from going through
25 defense counsel (who was under no duty to assist and chose to not do so).
26 Subsequently, all other defendants were acquitted at trial. [ECF 404, 405].
27 The Government now seeks to continue the case against Defendant *in abstentia*,
28 arguing that Federal Rule 43, which requires Defendant's physical presence at

sentencing, is no longer applicable, because Defendant entered the country illegally *perhaps twenty years or more prior to entering into the plea agreement*.

The defense maintains that dismissal with prejudice is mandated by the Government's forcible deportation and that these continued proceedings (which will likely result in a sentence that will never be served) are unwarranted, unlawful and an extreme waste of resources at a time when such are desperately scarce.

II.   ARGUMENT

A.   Whether The Matter Is In Post-Plea Or Pre-Plea Status Is Irrelevant

The Court has indicated that the post-plea status of the matter renders dismissal an inappropriate remedy. Not so. Every case in this district evaluating whether a deportation of a defendant with a pending case results in a dismissal with prejudice has determined it does -- and none mentioned the relevance of pre-plea or post-plea status.[1] Because the same principle applies – the Government, having prioritized deportation over prosecution by forcibly removing defendant from the court's jurisdiction – has made its choice, and there "is nothing more for the Courts to do." *USA v. Arreola., et al (Marco Antonio Arreola),* 5-MJ-4608-DUTY-2 (Orders of 8/18/2025 [ECF 35] and 8/27/2025 [ECF 38]) (*citing United States v. Trujillo-Alvarez*, 900 F.Supp.2d 1167, 1180 (D. Or. 2012)).

While post-plea dismissal is rarely granted in ordinary cases, this case is far from ordinary. The government cites no case where the defendant was forcibly removed from

---

[1] *USA v. Arreola., et al (Marco Antonio Arreola),* 5-MJ-4608-DUTY-2 (Orders of 8/18/2025 [ECF 35] and 8/27/2025 [ECF 38]); *United States of America v. Omar Solano-Lopez*, 8:25-cr-00093-HDV (Order of August 4, 2025); *United States v. Trujillo- Alvarez,* 900 F. Supp. 2d 1167 (D. Or. 2012) (Case No. 3:12-CR-00469-SI); *United States v. Munoz-Garcia*, 455 F. Supp. 3d 915 (D. Ariz. 2020) (Case No. CR-19-01670-001-TUC-JGZ (EJM); *United States v. Monteverde*, No. CR-20-00166- TUC-JCH-JR, 2021 WL 5534880 (D. Ariz. Oct. 7, 2021); *United States v. Ferreira-Chavez*, Case No. 1:20-cr-00145-BLW, 2021 WL 602822 (D. Idaho Feb. 12, 2021); and *United States v. Aldana-Aldana*, No. 2:25-MJ-01421-DUTY (C.D. Cal. Apr. 15, 2025).

the territorial jurisdiction of the federal courts -- this is a reverse absconding case where the culpable party is the government. Nor does the govern point to any cases where the defendant and his family have been placed in mortal danger by the government's conduct. Nor, significantly, can the government cite a case where a defendant was prevented from conferring with his lawyer face-to-face in helping prepare his defenses. Indeed, by deliberately interfering with communications between the defendant and his lawyer, the government's conduct far more akin to cases that *have* been dismissed as a result of government misconduct. The Government chose not to stay Defendant's deportation and should be forced to live with (rather than benefit from) that decision.

B. The Matter *Is* In Pre-Plea Status As A Result Of The Government's Deportation

The Government is understandably not asserting that the plea agreement is breached, as doing so would revert the matter to pre-plea status warranting dismissal with prejudice (*see cases cited* above). But the Government breached the implied covenant of good faith and fair dealing inherent in the plea agreement.[2]

Every contact contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. In *3500 Sepulveda, Ltd. Liab. Co. v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1324 (9th Cir. 2020), the Court held:

> "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 254 Cal. Rptr. 211 (Cal. 1988) (*quoting Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654 (Cal. 1958)). A party can breach the covenant without "breach of a specific provision of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (Cal. 1992). Rather, the question is whether the party's conduct, "while not technically transgressing the express covenants . . . frustrates the other party's rights to the benefits of the contract." *Racine & Laramie, Ltd. v.*

---

[2] To ensure compliance with procedural law, the defense will bring a motion to set aside the plea agreement – asserting the identical arguments put forward here – so that the Court may consider these agreements when determining the motion to dismisss.

*Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026 (Ct. App. 1992) (*quoting Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136 (Ct. App. 1990)). "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." *Carma Devs.,* 826 P.2d at 726. The party with discretionary power must exercise such power in good faith and through "objectively reasonable conduct." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779 (Ct. App. 1998) (*quoting Lazar v. Hertz Corp.,* 143 Cal. App. 3d 128, (Ct. App. 1983)).

This covenant prevents a contracting party from engaging in conduct which, while not technically transgressing the express covenants, frustrates the other party's rights to the benefits of the contract. Moreover, it imposes a duty to do everything that the contract presupposes it will do to accomplish the agreement's purpose. *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090 (N.D. Cal. 2008).

In this case, the plea agreement was simple – Defendant would make any appearances the Government wanted him to (including sentencing and any others) and which could assist him in obtaining a more lenient sentence, and the Government would support, and not frustrate, such endeavors. But that's not what happened. By deporting Defendant the Government deprived him of his ability to attend proceedings that could reduce his potential sentence.

Additionally, inherent in the plea agreement is an obligation not to subject a defendant to great risk of personal harm or death. For the reasons discussed below the Government breached this obligation as well.

Moreover, a material breach of a contract does not automatically discharge the contract, but merely excuses the injured party's performance and gives him the election of certain remedies. Those remedies include rescission and restitution, damages, specific performance, injunction, declaratory relief, *etc*. *United States v. Drew*, 259 F.R.D. 449, 451 (C.D. Cal. 2009). In light thereof, Mr. Hernandez selects rescission as the appropriate remedy, and the plea agreement should be deemed to no longer exist.

Accordingly, this matter should be restored to pre-plea status, invoking the plethora of applicable caselaw mandating dismissal with prejudice.

C. The Safety Concerns Precluding Defendant's Return Were Of The Government's Making

Prior to his deportation and while in ICE detention, Defendant was given no protection, despite the Government's commitment to doing so. In all likelihood, if and when defendant returns, he will again be in ICE custody – and there is no reason to believe the Department of Justice will or can do any better job of protecting Defendant while in ICE custody than the government did the last time. In fact, they've repeatedly argued that they have no duty to so. It therefore was the professional obligation of counsel not to expose Defendant to risks that the Government has refused to mitigate.

D. Sentencing A Deported Defendant Violates Due Process

The Government is asking that it has permission to take defendants who have entered pleas, deport them, and then proceed with sentencing. But a defendant's right to be present is so they can supply or correct information relevant to sentencing. This right outweighs any inconvenience the Government perceives by the defendant's presence. This cannot be the new norm.

By analogy, the Court may not sentence a defendant who is incompetent because he or she, *inter alia*, lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States,* 362 U.S. 402, 402 (1960). The same principle applies here – a defendant, having been deported, lacks the capacity to consult with counsel during sentencing. The Government took that power away, with no chance of it being restored, and should not be allowed to benefit by such conduct.

Moreover, the Court should inquire of the Government *why* it wants to proceed knowing full well that a sentence will not likely be served as a result of their

deportation of a defendant who, because a plea has been entered, will not actually serve the sentence. The defense cannot identify any public policy furthed by this practice. But the Government can acquire (a) a notch on its belt resulting from a statistic of a victory or substantial sentence; and (b) a feeling that the Government prevailed to a large extent.

Accordingly, the defense implores the Court to ask the Government a simple question – "why are you doing this?"

E. Such Continued Proceedings Following A Defendant's Deportation Unnecessarily Wastes The Limited Time And Resources Available To The Court, The Department Of Probation And Pre-Trial Services, And The Parties

An unfathomable number of hours have been expended on this ongoing motion to dismiss. Absent a dismissal, more hours will be spent by the Department of Probation and Pretrial Services on somehow preparing a Presentence Investigation Report about a defendant who has been deported to Mexico; by the parties in drafting sentencing-related submissions; and by the Court in determining the appropriate sentence. All to generate a sentence that will almost certainly never come to a fruition as a result of the deportation.

This Court is facing a crisis resulting from a lack of attorneys available to take cases due to the CJA-funding deferred payment crisis. Defense attorneys are scarce and insufficient to address the cases being filed by the Government. The Court should recognize the Government's abandonment of its case against Defendant and conserve its diminished resources for cases that the Government prioritized over deportation.

III.   CONCLUSION

For the reasons set forth above in addition to those asserted in prior submissions, this matter should be dismissed with prejudice.

Respectfully Submitted,

Dated:  November 10, 2025           By: _____
                                        Ian Wallach
                                        *Attorney for Defendant*