IAN WALLACH (SBN 237849)
THE LAW OFFICES OF IAN WALLACH, P.C.
5777 West Century Boulevard, Suite 750
Los Angeles, CA 90045
E-mail: iwallach@wallachlegal.com
Tel.:  (213) 375-0000
Fax.:  (213) 402-5516

*Attorney for Defendant*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    Plaintiff,<br><br>*v.*<br><br>GOMEZ,<br><br>                    Defendants. | Case No: 2:17-cr-00064-3-CAS<br><br>MOTION TO SET ASIDE PLEA AGREEMENT<br><br><br>Hearing Date:  November 24, 2026<br>Hearing Time: 12:00 p.m.<br>Courtroom:     8D<br><br>*Before Honorable Christina A. Snyder* |

This submission reiterates the argument put forward in Defendant's Supplemental Motion To Dismiss [ECF 463] and is intended to ensure that Defendant's claim that the plea agreement should be set aside, and the matter be restored to pre-plea status, be considered.

I.      Statement of Facts

Defendant was indicted on February 3, 2017 [ECF 1] and first appeared on December 8, 2020. [ECF 67]. A plea agreement was entered into within a year, on November 22, 2021 [ECF 95], which Defendant now seeks to set aside.

While awaiting sentencing, Defendant received grueling intimidating threats intended to stop any involvement in the criminal matter – including a photograph sent to his cell phone of a dismembered child accompanied by a list of the names of his immediate family members (AUSA Julie Shemitz responded by immediately having a federal agent contact Defendant and offer to provide any safety measures requested and to monitor the matter).  Declaration of Ian Wallach ("Wallach Dec."), ¶ 2.

Thereafter, on or about February 17, 2025, after five years of perfect performance on pre-trial supervision, Defendant was detained by the Government and kept in General Population in an ICE detention facility for 5 weeks, at great risk to his personal safety considering the threats he received. During this time, defense counsel had multiple phone calls and email correspondences with the Government seeking assistance for Defendant. But the Government refused to take any action (the assigned AUSA failed to even once speak to any official of ICE about the matter, even though the defense had connected the assigned AUSA via email to the ICE officer responsible for Defendant's ICE case). Wallach Dec., ¶ 3.

Subsequently, on March 24, 2025, Defendant was deported to Mexico. Wallach Dec., ¶ 4.

Prior to and during his deportation the Government did not request any future contact information from Defendant or provide any means for Defendant to contact the Government regarding his criminal matter, or vice versa, after his deportation. Wallach Dec., ¶ 5.

Later, however, the Government determined it wanted Defendant's assistance with various proceedings after all. However, while the Government could arrange for parole that would allow for his re-entry, the Government (a) refused to make any safety assurances regarding Defendant's return (despite multiple requests from defense counsel and inquiries from the Court); and (b) lacked means to contact Defendant aside from going through defense counsel (who was under no duty to assist and understandably chose to not in light of the potential safety risks). Wallach Dec., ¶ 5.

MOTION TO SET ASIDE PLEA AGREEMENT

Defendant seeks to set aside the plea agreement, as the above-mentioned conduct constitutes breaches of the plea agreement's implied covenants of good faith and fair dealing.

## II.    ARGUMENT

One seeking to set aside a plea agreement must establish – by a preponderance of the evidence – that a party breached one or more of its terms.  *United States v. Serrano*, 938 F.2d 1058 (9th Cir. 1991). Here, the Government breached the most basic of its obligations – keeping Defendant here so he could make appearances called for under the plea agreement that could result in a more lenient sentence (*See*, *inter alia*, Plea Agreement [ECF 95] at par. 2(d)) (mandating Defendant's presence for all court appearances) and not subjecting him to great risk of bodily injury or death while awaiting sentencing.

Every contact contains an implied covenant of good faith and fair dealing that neither party will do anything that will injure the right of the other to receive the benefits of the agreement. In *3500 Sepulveda, Ltd. Liab. Co. v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1324 (9th Cir. 2020), the Court held:

> "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (Cal. 1988) (quoting Comunale v. Traders & Gen. Ins. Co., 50 Cal. 2d 654 (Cal. 1958)). A party can breach the covenant without "breach of a specific provision of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (Cal. 1992). Rather, the question is whether the party's conduct, "while not technically transgressing the express covenants . . . frustrates the other party's rights to the benefits of the contract." *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026 (Ct. App. 1992) (*quoting Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136 (Ct. App. 1990)). "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." *Carma Devs.,* 826 P.2d at 726. The party with discretionary power must exercise such power in good faith and through "objectively reasonable conduct." *Badie v. Bank of*

MOTION TO SET ASIDE PLEA AGREEMENT

*Am.*, 67 Cal. App. 4th 779 (Ct. App. 1998) (*quoting Lazar v. Hertz Corp.*, 143 Cal. App. 3d 128, 141 (Ct. App. 1983)).

This covenant prevents a contracting party from engaging in conduct which, while not technically transgressing the express covenants, frustrates the other party's rights to the benefits of the contract. Moreover, it imposes a duty to do everything that the contract presupposes it will do to accomplish the agreement's purpose. *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090 (N.D. Cal. 2008).

In this case, the plea agreement contained two simple implied obligations on the part of the Government – The first was that the Government would support, and not frustrate, any endeavors on the part of Defendant to make the appearances the Government wanted him to (including sentencing and any others) which could assist him in obtaining a more lenient sentence. But by deporting Defendant the Government deprived him of his ability to attend proceedings that could reduce his potential sentence.

Second, inherent in the plea agreement is an obligation not to subject a defendant to great risk of personal harm or death. Prior to his deportation, while in ICE detention and despite the facts known by the government establishing a very real possibility of being harmed in light of the threats he had received – Defendant was given no protection, in violation of the Government's implied commitment to do so (and, even more so, not to subject him to such risk).[1]

The Government will argue that any breach of its duties described above were cured by its subsequent offer to return Defendant to the United States via the use of

---

[1] And the Government gave Defendant no reason to believe it would, or could, do any better job of protecting him while in ICE custody than they did the last time should he return (in fact, the Government has repeatedly argued in this matter that it had no duty to so). It therefore was the professional obligation of counsel not to expose defendant to risk that the Government has refused to mitigate, and the Government's proposed solution to use CBP parole to return Defendant to the United States did not cure its breach.

MOTION TO SET ASIDE PLEA AGREEMENT

parole. But this argument fails on two points – first, without providing any assurances as to Defendant's safety should he return, Defendant could not do so without subjecting himself to a very real possibility of physical harm or death in light of the threats his received and his status (pre-sentencing and not being a defendant in the trial), making the realization of those threats a genuine possibility. Second, without invoking the assistance of defense counsel, who had no duty to assist the Government in such efforts (and a strong incentive not to – that being to not let his client be harmed), the Government lacked any means to communicate the mechanics of such parole to Defendant, as it did not maintain, or even attempt to maintain, any line of communication between itself and Defendant when it deported him. The Government jettisoned Defendant from the country and was done with him. Any lack of capability to effectuate a parole process is a problem of the Government's making.

The conduct discussed above certainly establishes beyond a preponderance of the evidence that the Government breached its implied obligations (1) to not frustrate Defendant's efforts to fulfill his own obligations under the plea agreement; and (2) to not subject Defendant, or allow Defendant to be subjected to, a risk of great bodily injury or death during the period of time encompassed by the plea agreement. Moreover, the Government's offer to return Defendant to the United States via the use of a parole process was both an insufficient remedy absent accompaniment of any safety assurances and an impossible one -- as the Government deported Defendant without maintaining any lines of communication with him.

III.   CONCLUSION

For the reasons set forth above, the plea agreement should be set aside.

Respectfully Submitted,

Dated:  November 12, 2025        By:  _____

Ian Wallach
*Attorney for Defendant*

---

5

MOTION TO SET ASIDE PLEA AGREEMENT

## DECLARATION

I, Ian Wallach, hereby state and swear as follows:

1. I am counsel to Defendant No. 3 in this action, having been appointed under the Criminal Justice Act.

2. Following the entrance of his plea and while awaiting sentencing, Defendant received grueling intimidating threats intended to stop any involvement in the criminal matter – including a photograph sent to his cell phone of a dismembered child accompanied by a list of the names of his immediate family members (AUSA Julie Shemitz responded by immediately having a federal agent contact Defendant and offer to provide any safety measures requested and to monitor the matter).

3. On or about February 17, 2025, after five years of perfect performance on pre-trial supervision, Defendant was detained by the Government and kept in General Population in an ICE detention facility for 5 weeks, at great risk to his personal safety considering the threats he received. During this time, defense counsel had multiple phone calls and email correspondence with the Government seeking assistance for Defendant. But the Government refused to take any action (the assigned AUSA failed to even once speak to any official of ICE about the matter, even though the defense had connected the assigned AUSA via email to the ICE officer responsible for Defendant's ICE case).

4. On March 24, 2025, Defendant was deported to Mexico.

5. Later, however, the Government determined that it wanted Defendant's assistance with various proceedings after all. However, while the Government could arrange for parole that would allow for his re-entry, the Government (a) refused to make any safety assurances regarding Defendant's return (despite multiple requests from defense counsel and inquiries from the Court); and (b)

lacked means to contact Defendant aside from going through defense counsel (who was under no duty to assist and understandably chose to not in light of the potential safety risks).

Dated:  November 12, 2025

By: _____

Ian Wallach

DECLARATION