UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**                    'O'

| Case No. | 2:17-cr-00064-CAS - 3 | | Date | November 24, 2025 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Maria Bustillos | JohnPaul LeCedre |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant: | Present | Cust. | Bond | Attorney for Defendant: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| JAVIER HERNANDEZ | NOT | | X | IAN WALLACH | X | X | |

**Proceedings:**         ZOOM HEARING RE:

DEFENDANT'S MOTION TO DISMISS CASE (Dkt. 170, filed April 2, 2025); DEFENDANT'S MOTION TO DISMISS CASE (Dkt. 463, filed November 10, 2025);

DEFENDANT'S MOTION TO SET ASIDE PLEA AGREEMENT (Dkt. 466, filed November 12, 2025)

## I.    INTRODUCTION AND BACKGROUND

On February 3, 2017, the government filed a three-count indictment against defendants Esmeralda Gomez, Raymundo Lugo Martinez, Javier Hernandez (aka Francisco Iniguez) (hereafter, "defendant") and Henry Quijada.  Dkt. 1.  The indictment charged defendants with (1) conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); and (3) sought criminal forfeiture, pursuant to 18 U.S.C. § 982(a)(1)(A).  Id.

On December 8, 2021, defendant entered a plea of guilty to Count 1 of the Indictment, charging him with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), b(1)(A)(viii).  Dkt. 99.  Defendant agreed to cooperate with the government and testify at the jury trial of two co-defendants, which was scheduled for August 19, 2025.  Dkt. 161 at 2; Dkt. 168 ¶ 3.

On February 19, 2025, defendant was arrested by United States Immigration and Customs Enforcement (ICE) and detained at Desert View Facility in Adelanto, California for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**                    **'O'**

removal proceedings.  Dkt 163 at 1.  On February 19, 2025, after defense counsel notified government counsel that defendant had been detained by immigration officials, the parties stipulated to continuing defendant's sentencing hearing to October 6, 2025.  Dkt. 162.

On March 17, 2025, defendant filed a writ of habeas corpus, and the government filed a non-opposition.  Dkts. 164, 165.  The Court set a hearing for March 31, 2025.  Dkt. 169.  At the hearing, counsel for defendant notified the Court and the government that defendant had been deported.  Dkt. 172.  On April 1, 2025, Pretrial Services notified the Court that it had made contact with defendant who advised Pretrial Services that he was deported on March 24, 2025, by ICE, and that he was now residing in Mexico.  Dkt. 171 at 1.  Pretrial Services notified defense counsel and Assistant United States Attorney LeCedre, who each reported being aware of the situation.  Id.

On April 2, 2025, defendant filed the instant motion to dismiss.  Dkt. 170 ("Mot.").  On April 14, 2025, the government filed its opposition.  Dkt. 178 ("Opp.").  On April 17, 2025, defendant filed a reply.  Dkt. 181 ("Reply").  On April 28, 2025, the government filed its surreply.  Dkt.193 ("Surreply").

Defendant filed several supplemental replies, notices of supplemental authority, and responses to government filings, all in support of the instant motion to dismiss.  Dkts. 188, 198, 225, 261, 387, 395, 411, 425.  The government filed several responses, objections, and supplemental declarations, generally in opposition to defendant's motion to dismiss.  Dkts. 199, 208, 228, 254, 429, 424.

On September 23, 2025, defendant filed a statement that as a result of defense counsel's limited communications with defendant, defense counsel would not be able to submit a Sentencing Position Paper for the sentencing scheduled for October 6, 2025.  Dkt. 426.  On September 30, 2025, the government filed its sentencing memorandum.  Dkt. 440.  On October 1, 2025, the government filed a response to defendant's statement regarding the Sentencing Position Paper.  Dkt. 433.  On October 3, 2025, defendant filed a reply to the government's response to defendant's statement regarding the Sentencing Position Paper.  Dkt. 450.

On October 2, 2025, defendant filed an *ex parte* application to set a hearing date for the motion to dismiss and to continue defendant's sentencing hearing.  Dkt. 444.  On October 2, 2025, the government filed its opposition to defendant's *ex parte* application to continue the sentencing hearing.  Dkt. 447.  On October 2, 2025, defendant filed a reply to the government's opposition.  Dkt. 437.

On October 3, 2025, the Court, on its own motion, converted the sentencing hearing on October 6, 2025, to a status conference.  Dkt. 441.  At the status conference, the Court set a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES – GENERAL                'O'

hearing for defendant's motion to dismiss on November 24, 2025, and the Court reset defendant's sentencing hearing to February 23, 2026.  Dkt. 451.  The Court permitted defendant and the government to each file one supplemental brief.  Id.

On November 10, 2025, defendant filed a supplemental motion to dismiss.  Dkt. 463 ("Supp. Mot.").  On November 12, 2025, defendant filed a motion to set aside the plea agreement.  Dkt. 466 ("Plea Withdrawal Mot.").  On November 17, 2025, the government filed a supplemental brief in opposition to defendant's motion to dismiss and defendant's motion to set aside the plea.  Dkt. 469 ("Supp. Opp.").  On November 21, 2025, defendant filed a "Final Reply to Opposition to Supplemental Motion to Dismiss," and an "Addendum to Final Reply." Dkt. 473 ("Fin. Reply") and Dkt. 474 ("Addendum").[1]

On November 24, 2025, the Court held a hearing.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

### A.    Motion to Set Aside Guilty Plea

Pursuant to Fed.R.Crim.P. 11(d)(2)(B), the court may, prior to sentencing, permit a defendant to withdraw a plea of guilty "if the defendant can show a fair and just reason for requesting the withdrawal."  The defendant bears the burden of establishing a fair and just reason for withdrawal.  United States v. McTiernan, 546 F.3d 1160, 1166–67 (9th Cir. 2008) (citing United States v. Davis, 428 F.3d 802, 805 (9th Cir. 2005)).  While "the 'fair and just' standard is generous and must be applied liberally," "each case must be reviewed in the context in which the motion arose to determine whether, ultimately, a 'fair and just' reason exists."  Id. "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea."  United States v. Ortega-Ascanio, 376 F.3d 879, 883 (9th Cir. 2004).  A defendant does not have a right to withdraw a guilty plea. United States v. Myers, 993 F.2d 713, 714 (9th Cir. 1993).  The decision to permit withdrawal of a plea is within the discretion of the district court.  United States v. Nostratis, 321 F.3d 1206, 1208 (9th Cir. 2003).

---

[1] At the Status Conference on October 3, 2025, the Court directed the parties to each file *one* supplemental brief without reply.  Defendant's filing of a Final Reply and Addendum was not permitted by the Court.  The Court, nevertheless, reviewed defendant's filings, and the Court notes that defendant's arguments do not affect the Court's ruling.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**               **'O'**

### B.      Motion to Dismiss Indictment

"A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation." United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir. 1991) (citing United States v. Simpson, 813 F.2d 1462, 1464–65 (9th Cir.), cert. denied, 484 U.S. 898 (1987) (Simpson I)). "If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." Barrera-Moreno, 951 F.2d at 1091. Courts "have inherent supervisory powers to order dismissal of prosecutions for only three legitimate reasons: (1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct. United States v. Matta-Ballesteros, 71 F.3d 754, 763 (9th Cir. 1995), opinion amended on denial of reh'g, 98 F.3d 1100 (9th Cir. 1996) (citing United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir. 1991) (Simpson II)). Dismissal of an indictment "is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." Barrera-Moreno, 951 F.2d at 1092. "The defendant must demonstrate prejudice before the court may exercise its supervisory powers to dismiss an indictment." United States v. Struckman, 611 F.3d 560, 574–75 (9th Cir. 2010) (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988); United States v. Ross, 372 F.3d 1097, 1110 (9th Cir.2004)).

## III.   DISCUSSION

### A.      Motion to Set Aside Guilty Plea

Defendant argues that the plea agreement must be set aside because the government breached one or more of its terms. Plea Withdrawal Mot. at 1. Defendant argues that the government "breached the most basic of its obligations": "keeping [d]efendant here so he could make appearances called for under the plea agreement that could result in a more lenient sentence" and "not subjecting [defendant] to great risk of bodily injury or death while awaiting sentencing." Id. Defendant cites par. 2(d)[2] of the plea agreement and an implied covenant of good faith and fair dealing to argue that these two obligations were implied on the part of the government. Id. Defendant argues that by deporting him, the government breached the first of these implied obligations: to not frustrate defendant's ability to make appearances. Id. at 4. Defendant argues that the government breached the second implied obligation—to not subject defendant to great risk of personal harm or death—by allowing defendant to be detained by

---

[2] "Defendant agrees to: [. . .] d.  Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter."  Dkt. 95 ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**           **'O'**

Immigration and Customs Enforcement (ICE) despite knowing of a very real possibility of defendant being harmed in light of threats he had previously received. Id. Finally, defendant argues that the Government's offer to return defendant to the United States via parole does not cure its breach of these implied duties because: (1) the government cannot provide assurances of defendant's safety; and (2) the government cannot effectuate a parole process without invoking the assistance of defense counsel, who has no duty to assist[3] the government in such efforts. Id. at 5.

In opposition, the government argues that defendant does not and cannot identify any breach of an express obligation of the plea agreement on the part of the government. Supp. Opp. at 1-2, 12. The government argues that defendant's premise for implied obligations fails because the implied covenant of good faith and fair dealing is California law that does not apply to federal criminal pleas. Id. at 10. The government argues that the plea agreement must be judged by its literal terms. Id. at 11. The government also contends that defendant's safety narrative does not withstand scrutiny, and an uncorroborated email "threat" from nearly two years ago should not be used to justify the extreme measure of rescinding a plea agreement. Id. The government argues that defendant's removal was not a breach but rather a foreseeable implementation of a consequence that was disclosed in the plea agreement and defendant knowingly accepted under oath at his Rule 11 colloquy. Id. at 12-13.

The Court finds that defendant has not shown a fair and just reason for withdrawing his plea. Defendant does not contend that his Rule 11 colloquy was inadequate or that there is newly discovered evidence that goes to the question of defendant's guilt. Nor can defendant plausibly argue that his removal from the United States is a "new reason" for his plea decision that did not exist at the time of his initial guilty plea. See United States v. Hernandez, 105 F.4th 1234, 1237 (9th Cir. 2024) ("[A] defendant cannot withdraw his plea for just any 'new' reason. To withdraw a plea, a defendant must show that (1) the 'new' reason is being offered in good-faith and that he subjectively did not know this reason for his plea withdrawal at the time of the plea, and (2) it was objectively reasonable to have not known about or anticipated this material new reason, either."). The Court finds that it would be objectively unreasonable for defendant to have not anticipated his lawful removal from the United States by the government because he was explicitly advised of this consequence in the terms of the plea agreement and during his Rule 11 colloquy. See Dkt. 95 ¶ 11; Dkt. 469-1 at 15-16. Instead, the Court interprets defendant's argument to be that "breaches" of the government's implied obligations constitute an "intervening circumstance" or "other reason" to justify withdrawal of his plea.

---

[3] Defense counsel also argues that he has "a strong incentive not to" assist the government with effectuating parole, such as to "not let his client be harmed." Plea Withdrawal Mot. at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**                         **'O'**

The government has a duty of good faith in plea bargaining.  See United States v. Krasn, 614 F.2d 1229, 1234 (9th Cir. 1980) (prosecutors have an obligation under the duty of good faith to inform a defendant during plea negotiations of other possible criminal charges which may be filed) (citing Santobello v. New York, 404 U.S. 257, 262 (1971).  However, this duty of good faith does not create the implied obligations on the government that defendant asserts in the instant motion, which not only extend beyond the terms of the plea agreement but directly contradict the terms of the plea agreement.  See United States v. Johnson, 187 F.3d 1129, 1134 (9th Cir. 1999) ("Plea agreements are contracts, and the government is held to the literal terms of the agreement.").

Defendant first asks the Court to find an implied obligation on the government not to deport defendant prior to sentencing.  But according to the terms of the plea agreement, defendant's removal was a "virtual certainty in this case" and explicitly "the subject of a separate proceeding."  Dkt. 95 ¶ 11.  Contrary to defendant's claim, par. 2(d) of the plea agreement imposed an obligation *on defendant* to appear for all court appearances, notwithstanding par. 11.  Id. at ¶ 2; see supra n.1.  Furthermore, defendant expressly confirmed his knowing understanding that "[his] guilty plea may subject [him] to *immediate* deportation proceedings" during his Rule 11 colloquy.[4]  Dkt. 469-1 at 15-16.  Although the deportation of a defendant *prior* to trial may frustrate a defendant's ability to make further appearances—as evident in this case—the government may not be held to an affirmative obligation to ensure that defendant is protected from lawful immigration consequences unless the government expressly agrees to such a term.

Defendant next claims that the government breached an implied obligation "not to subject a defendant to great risk of personal harm or death."  Plea Withdrawal Mot. at 4.  The Court notes that the government contests defendant's claim that he has been or is currently subject to grave danger by way of his lawful immigration detention and removal by the government.  Supp. Opp. at 11-12.  The Court need not determine the credibility of defendant's endangerment claim because the Court finds that the government did not expressly agree to

---

[4] Defendant argues that "[i]f there was even the slightest possibility that either the Government or the Court would have perceived that a deportation could occur prior to sentencing, then such would have been made clear during the change of plea hearings."  Fin. Reply at 2.  While the Court acknowledges that these circumstances were not anticipated, the Court nevertheless finds that defendant was advised of the possibility of "immediate deportation" in the Rule 11 colloquy.  Dkt. 469-1 at 15-16.  Defendant acknowledges that this fact is dispositive.  Fin. Reply at 3 ("If the Court imagined such a scenario as a possibility, the defense argument fails.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**             **'O'**

ensure the personal safety of defendant.[5]  And the Court similarly declines to find such an implied affirmative obligation in the plea agreement.

In sum, the Court finds that the government has not breached the plea agreement.  Thus, the Court concludes that defendant has not shown a fair and just reason for withdrawal of his plea.  Accordingly, the Court **DENIES** defendant's motion to set aside the plea agreement.

### B.     Motion to Dismiss Indictment

In defendant's first motion to dismiss, he argues that he has a constitutional right to counsel at sentencing and for his trial not to continue in his absence.  Mot. at 3.  He argues that "[h]e has the right to give an allocution at sentencing and to present facts and mitigating circumstances to the Court so that it may impose a sentence sufficient, but not greater than necessary to comply with the 18 U.S. Code § 3553(a) factors."  Id.  Defendant argues that by deporting him while this action was pending, the government interfered with defendant's rights, warranting dismissal.  Id.  Defendant contends that the government deported defendant without notice to his counsel and without permission of the Court, resulting in "a reverse-absconding situation, where the [g]overnment, through its own misconduct has made it impossible for this Court to perform its statutory and constitutional duties."  Id.  According to defendant, this should result in dismissal of the indictment.  Id.  Defendant argues that because the alleged conduct took place outside of the statute of limitations period, the indictment should be dismissed with prejudice.  Id. at 4.

In opposition, the government contended that defendant's "removal was not requested, directed, or facilitated by the prosecution, and it was a predictable, collateral consequence of his known lack of lawful immigration status."  Opp. at 1.  The government contended that it was working to secure immigration parole status so that defendant could lawfully enter and return to

---

[5] In the Addendum and at oral argument, defendant argues that the government has a duty to protect cooperating witnesses.  Addendum at 2, 3.  Defendant argues that the government's failure to provide defendant protection against immigration detention or deportation violates this duty and justifies withdrawal of the plea or dismissal of the indictment.  Id.  However, defendant only cites to the government's requests for protective orders as evidence of such an affirmative duty of the government to protect cooperating witnesses.  Furthermore, there is no evidence that such a duty to protect was breached by the government's deportation of defendant, particularly where, as here, defendant had sought his own pre-trial release on bond and had knowingly accepted the possibility of deportation as a consequence of his plea.  To the extent that defendant' removal to Mexico subjects him to greater danger than his presence in the United States, the record shows that the government has made efforts to facilitate defendant's return through the parole process.  See Dkt. 208  ("Decl. of LeCedre").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**                  **'O'**

the United States, to enable him to appear at trial as a witness and at his own sentencing. Id. The government further argued that "[d]ismissal would prevent [d]efendant's likely imminent lawful return and eliminate his opportunity to complete cooperation." Id. According to the government, defendant had not yet suffered any harm and the government was actively working to facilitate his return. Id. The government contended that where it acted in good faith to return defendant "well in advance of the hearing date," as it did here, no due process violation can arise. Id. at 5. The government argued that once a defendant enters a guilty plea, "the avenues to challenge or dismiss the charges are significantly constrained," as the Federal Rules of Criminal Procedure do not provide for dismissal of an indictment after a guilty plea but before sentencing, and the Court only has the power to dismiss in such circumstances where the interests of justice so require. Id. at 3.

Additionally, the government argues that it "has acted promptly and affirmatively to initiate parole and reentry through lawful processes–CBP Parole, which allows an otherwise undocumented person to enter and remain the United States for reasons of 'significant public benefit,' including cooperation at a criminal trial." Id. at 5. Accordingly, the government argues, defendant is not expected to suffer harm because he is expected to be able to be present at his sentencing. Id. at 6. The government argues that if defendant refuses lawful reentry, the Court should deem his absence from sentencing voluntary, and he should be sentenced in absentia. Id. The government also argues that defendant's claim that he is in danger in Mexico "underscores the need to maintain the criminal case so that [d]efendant may return via lawful means," which would not be available if the case were dismissed. Id. at 6-7.

In his supplemental filings, defendant cited several district court cases where a criminal defendant was deported, and where courts found dismissal of indictment with prejudice to be warranted in such cases.[6] Defendant argues that the government' proposed remedy of parole is inappropriate because it requires the cooperation of defense counsel, and it is inadequate because the government cannot guarantee defendant's safety in the process. Dkt. 188 at 8, 9. Defendant further argues that sentencing a deported defendant violates due process, and that the

---

[6] See Dkt. 198 (citing United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012)); Dkt. 261 (citing United States v. Calderon-Lopez, No. CR-19-03027-001-TUC-RM-DTF, 2020 WL 2616034 (D. Ariz. May 22, 2020)); Dkt. 387 (citing United States of America v. Omar Solano-Lopez, 8:25-cr-00093-HDV (Order of August 4, 2025) and citing United States v. Munoz-Garcia, 455 F. Supp. 3d 915 (D. Ariz. 2020); United States v. Monteverde, No. CR-20-00166- TUC-JCH-JR, 2021 WL 5534880 (D. Ariz. Oct. 7, 2021); United States v. Ferreira-Chavez, No. 1:20-cr-00145-BLW, 2021 WL 602822 (D. Idaho Feb. 12, 2021); United States v. Aldana-Aldana, No. 2:25-MJ-01421-DUTY (C.D. Cal. Apr. 15, 2025)); Dkt. 395 (citing United States v. Arreola Arreola et al (Marco Antonio Arreola), 5-MJ-4608DUTY-2 (Orders of August 18, 2025, and August 27, 2025)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**        **'O'**

government is wasting judicial and public resources in pursuing a sentence against a defendant who "will not actually serve the sentence."  Supp. Mot. at 6-7.

In its supplemental opposition, the government reiterates its argument that defendant knowingly accepted the consequences of removal in the plea agreement and Rule 11 colloquy. Supp. Opp. at 2.  The government also disputes counsel's claims of lack of communication with defendant.  Id. at 5.  And the government concludes that defendant's removal does not constitute government misconduct because the government, specifically the Department of Homeland Security, retains authority to deport removable noncitizens independent of ongoing criminal prosecutions.  Id. at 7.  The government also argues that defendant's claim that he "will never serve" his sentence is factually wrong and legally irrelevant because he may be returned to the United States or otherwise would be precluded from re-entering the United States lest he be taken into custody and the sentence executed.  Id. at 9.

First, the Court finds that the government's lawful removal of defendant does not constitute government misconduct, let alone outrageous or illegal government conduct.  See United States v. Ferreira-Chavez, No. 1:20-CR-00145-BLW, 2021 WL 602822, at *3 (D. Idaho Feb. 12, 2021) ("The Court does not find that the deportation itself was unconstitutional.  Nor does the Court find that ICE does not have the authority to take the actions it did.").  Nonetheless, the government's decision to deport a criminal defendant prior to the conclusion of a criminal prosecution may—and indeed does in many cases[7]—violate the defendant's statutory or constitutional rights such as to warrant a remedy by the court's supervisory powers. See United States v. Santos-Flores, 794 F.3d 1088, 1091 (9th Cir. 2015) ("If the government, by placing [defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy.).

However, the cases that defendant cites in support of his motion to dismiss the indictment are factually and legally distinguishable from the issue facing the Court at present.  In all but one of these cases, the defendants were detained or deported prior to trial or a guilty plea.  In those cases, the district courts found that dismissal was warranted because defendant's immigration detention was a violation of the Bail Reform Act or because removal of the defendant violated the Speedy Trial Act, defendant's Sixth Amendment right to a speedy trial, and/or defendant's Sixth Amendment right to counsel.  In the only case that defendant cited where the defendant had also pled guilty prior to his deportation, the government had moved for voluntary dismissal without prejudice of the criminal case for illegal reentry under 8 U.S.C. § 1326 after the defendant had been deported.  United States of America v. Omar Solano-Lopez,

---

[7] See supra n.5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**                    **'O'**

8:25-cr-00093-HDV (Order of August 4, 2025).  There, the court found that the criminal case against the defendant should be dismissed with prejudice.  Id.

Here, defendant had pled guilty to a count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii) more than three years prior to his deportation by the government.  Dkt. 99; Dkt. 171.  The Court disagrees with defendant's assertion that his post-plea status is irrelevant.  Supp. Mot. at 3.  Unlike the cases that defendant cites, here, defendant's removal does not implicate the Bail Reform Act, the Speedy Trial Act, or defendant's Sixth Amendment right to a speedy trial, which defendant had waived in his plea agreement.  Dkt. 95 ¶ 19(b).

Still, defendant's rights to counsel and to personal presence at sentencing may be impacted by his deportation.  Defendant has the Sixth Amendment right to counsel and the fundamental right to personal presence at every critical stage of his prosecution, including at sentencing.  Gardner v. Fla., 430 U.S. 349, 358 (1977); Rushen v. Spain, 464 U.S. 114, 117 (1983) ("Our cases recognize that the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant").

However, in contrast to a pre-plea deportation, where defendant's "right to 'consult with counsel, to review the evidence against him[,] and to prepare a defense to the charge,'" may be prejudiced by his removal to a different country, the Court finds that defendant's rights to counsel and personal presence *at sentencing* have not yet been materially prejudiced because defendant's sentencing has been continued to February 23, 2026.  United States v. Calderon-Lopez, No. CR-19-03027-001-TUC-RM-DTF, 2020 WL 2616034, at *2 (D. Ariz. May 22, 2020) (citing United States v. Resendiz-Guevara, 145 F. Supp. 3d 1128, 1138 (M.D. Fla. Nov. 12, 2015)); see also Maine v. Moulton, 474 U.S. 159, 170, (1985) ("[T]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself.").

Dismissal of an indictment pursuant to the Court's supervisory powers is "an extreme sanction which should be infrequently utilized."  United States v. Owen, 580 F.2d 365, 367 (9th Cir. 1978); see also United States v. Barrera-Moreno, 951 F.2d 1089, 1092 (9th Cir. 1991) ("Dismissal is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right *and no lesser remedial action is available*.") (emphasis added).  While some district courts have found that the availability of the parole process does not remedy the Sixth Amendment violation that results from a defendant's pre-plea deportation, the Court finds here that the availability of the parole process is sufficient to remedy the impact of deportation on defendant's rights to counsel and presence at sentencing, which is currently scheduled on February 23, 2026.  See United States v. Plancarte-Alvarez, 366 F.3d 1058, 1063–64 (9th Cir. 2004), opinion amended on denial of reh'g, 449 F.3d 1059 (9th Cir. 2006) (denying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          **'O'**

defendant's argument that deported defendant's unavailability requires dismissal of the government's cross-appeal for a higher sentence because the defendant "might return to this country, whether voluntarily or otherwise.").

Defendant must be present for his sentencing.  Fed. R. Crim. P. 43.  At oral argument, defense counsel argues that defendant's absence at sentencing would be involuntary because his removal from the country was involuntary.  The Court agrees that "a deportee by definition does not voluntarily leave the country." United States v. Suleiman, 208 F.3d 32, 40 (2d Cir. 2000).  However, the proper inquiry at sentencing is not whether defendant has voluntarily left the country, but rather whether defendant is voluntarily absent from his sentencing hearing. Fed. R. Crim. P. 43(c)(1)(B).  While the Court is persuaded that defendant's presence in another country has a limiting effect on communication between defendant and defense counsel, the Court also finds that defense counsel has been able to communicate, albeit in limited fashion, with defendant.  Therefore, defendant may be notified by defense counsel of the opportunity to appear at his sentencing hearing via the parole process.[8]  If defendant chooses not to avail of the parole process or otherwise appear at his sentencing hearing, the Court may find that defendant waives the right to be present by his voluntary absence.  Fed. R. Crim. P. 43(c)(1)(B).  The Court need not make such a determination at this juncture.

In sum, the Court finds that defendant has not been deprived of his rights to counsel at sentencing and to appear at sentencing because he may yet return to the United States via the parole process.  Accordingly, the court **DENIES** defendant's motions to dismiss the indictment.

## IV.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motions to dismiss and motion to set aside the plea agreement.

IT IS SO ORDERED.

|  | 00 | : | 42 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[8] At oral argument, defense counsel contends that the parole process is insufficient because the government has not explained how defendant could effectuate his return to the United States without the cooperation of defense counsel.  The Court recognizes that defense counsel is under no obligation to advise his client to pursue any course of conduct that would be against the interest of his client.  See Model Rules of Prof'l Conduct R. 2.1.  However, the Court also finds that defense counsel is ethically obligated to inform his client of the government's offer of parole as a significant development related to his case.  See Cal. Bus. & Prof. Code § 6068(m); Model Rules of Prof'l Conduct R. 1.4; Cal. Rules of Prof. Conduct R. 1.4(a)(3).